648 So.2d 866 (1995)
Alton ROMERO, M.D., and Janice Romero
v.
THOMSON NEWSPAPERS (WISCONSIN), INC., Thomson Southwest, Inc., Richard D'Aquin, Charles Lenox, Michael Spears and David Hawkings.
No. 94-CC-1105.
Supreme Court of Louisiana.
January 17, 1995.
*868 Bob F. Wright, Gilbert H. Dozier, Domengeaux & Wright, for applicant.
Hunter W. Lundy, Winfield E. Little, Jr., Lundy & Dwight, Barbara D. Gibson, for respondent.
Mark B. Holton, Jack M. Weiss, III, for Louisiana Press Ass'n Amicus Curiae.
WATSON, Justice.[1]
This is a defamation suit in which plaintiffs, Dr. Alton Romero and his wife Janice, claim damages from various defendants because of an article published in The Daily Advertiser, a Lafayette, Louisiana newspaper. The issue is whether defendants [Thomson Newspapers (Wisconsin), Inc., Richard D'Aquin, Charles Lenox, Michael Spears and David Hawkings] are entitled to a summary judgment.

FACTS
In 1992, Ingrid VanTuinen and Dr. Sidney M. Wolfe published a report entitled "Unnecessary Cesarean Sections: Halting a National Epidemic," a research effort by the Public Citizen's Health Group. The report stated that there is no correlation between high Caesarean section rates and low infant mortality. Among 47 states and the District of Columbia, Louisiana had the third highest 1990 Caesarean section rate (27.3 percent). The hospital named with the highest Caesarean rate was Abrom Kaplan Memorial Hospital in Kaplan, Louisiana, with 57.5 percent. A news release summarized the reported data. Various newspapers picked up the news release, including the New Orleans Times Picayune and The Los Angeles Times.
David Hawkings, a Daily Advertiser reporter based in Washington, D.C., undertook writing the story and called Abrom Kaplan Memorial Hospital, as well as three other Louisiana hospitals mentioned in the report. Hawkings testified in deposition that he also called several state medical groups. The Daily Advertiser printed his story. In pertinent part, the article stated the following:
State has high C-section rate
3 area hospitals among nation's highest
By David Hawkings
Advertiser Washington Bureau
WASHINGTONThe Caesarean section rates at three hospitals, in the Lafayette area are among the nation's highest and at least triple what is medically necessary, a major consumer group reported Tuesday.
After analyzing the records of 2,657 hospitals in 34 states, Public Citizen said the highest incidence of Caesareans it found anywhere was at Abrom Kaplan Memorial Hospital, Kaplan, where the surgery was used to deliver 57.5 percent of babies.
* * * * * *
None of the hospitals disputed the figures for 1990. Abrom Kaplan and Women's and Children's attributed their high rates to a large number of repeat Caesarean patients....
Louisiana's 27.3 percent rate was the third-highest behind Nevada and Arkansas among the 48 states surveyed by Public Citizen, founded by the consumer activist Ralph Nader. Half of the top 20 Caesarean rates in the study were in Louisiana hospitals.
"Louisiana's women are being butchered by their obstetricians in the way they do so many c-sections," said Dr. Sidney M. Wolfe, director of Public Citizen's Health Research Group. "The woman of Louisiana should be outraged and should start trying to do something about this."
* * * * * *
The group estimated that "unnecessary" Caesarean surgeries added at least $1.3 billion to national health spending. The surgery nearly doubles the cost of a birth *869 and increases the average hospital stay to four days.
"There are many valid reasons for a doctor to decide to perform a c-section, but too often the decision is made for reasons unrelated to the health of either the mother or child," said the study's author, Ingrid VanTuinen.
"Misdiagnosis and widely varying individual physician practice patterns play a part, along with factors of convenience, increased revenue for doctors and hospitals and the lingering fear of malpractice suits," she said.
The president of the Greater New Orleans Obstetrical and Gynecological Society, Dr. W. Ryckman Caplan, said Public Citizen had overstated the problem.
The administrator of the 40-bed Abrom Kaplan, Ray Landry, attributed that hospital's high rate to the only obstetrician at the hospital, Dr. Alton Romero. Romero is nearing retirement and only attends longtime patients who have had previous childrenthe category of women most likely to have a Caesarean.[2]
Prior to writing the article, David Hawkings called Dr. Sidney Wolfe, who testified in deposition that the information in the article correctly reflected the research. Dr. Wolfe confirmed his statement that Louisiana's women were being butchered.
Ray A. Landry, administrator of Abrom Kaplan Memorial Hospital, testified in deposition that he had talked to Hawkings. Landry told Hawkings that the hospital had only one obstetrician, Dr. Romero, and that Dr. Romero's practice was limited. Landry did not say Dr. Romero was nearing retirement. Landry said he "referred to a practice that maybe was semi-retired".
Only the last portion of The Daily Advertiser article refers to Dr. Romero. He was, at the time, responsible for all deliveries at Abrom Kaplan Hospital. Dr. Romero contends that his Caesarean rate was 53.5 percent, not 57.5 percent, but concedes that over 50 percent of his deliveries were Caesareans. Dr. Romero was only forty-three and was not nearing retirement. Landry's description of Dr. Romero as having a limited, semi-retired practice gave an erroneous impression.
The trial court denied defendants' motion for summary judgment, and the Court of Appeal, Third Circuit, denied review. This Court granted certiorari to decide whether the trial court erred in denying defendants' motion for summary judgment. Romero v. Thomson Newspaper (Wisconsin), Inc., et al, 94-1105 (La. 5/20/94), 637 So.2d 473.

LAW
Since New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the law of libel and slander has been delineated by federal constitutional law. Under the New York Times rule, a public official or figure must prove that a false statement was made with actual malice to recover for defamation. See Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Actual malice is demonstrated by a false statement made with knowledge of its falsity or with reckless disregard for the truth. There is authority for applying the New York Times rule when an article concerns public issues, even though the plaintiff is a private person. Rosenbloom v. Metro Media, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).
When The New York Times standard applies, summary judgment should be granted for the speaker/writer unless there is clear and convincing evidence that a genuine issue of actual malice exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Failure to investigate does not present a jury question on whether the statements were published with malice, i.e., reckless disregard for the truth. Beckley Newspapers Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967).
Speech on matters of public concern enjoys enhanced constitutional protection. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). See The Florida Star *870 v. B.J.F., 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989). Hyperbole, which could not reasonably be interpreted as stating actual fact, is protected. Greenbelt Cooperative Publishing Ass'n v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970).
A private figure plaintiff claiming defamation from a factual misstatement on a public issue cannot recover presumed or punitive damages without showing actual malice. Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Where a newspaper publishes public interest material, a private figure plaintiff cannot recover compensatory damages without showing that the statements are false and the media defendant was at fault. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).
"[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." Milkovich v. Lorain Journal Co., 497 U.S. 1 at 20, 110 S.Ct. 2695 at 2706, 111 L.Ed.2d 1 at 18 (1990).
The standard by which a negligent publisher of defamatory falsehoods is liable to a private figure plaintiff for compensatory damages is left to state law. Gertz. The Louisiana Constitution guarantees freedom of the press in Article 1, § 7, as follows:

Freedom of Expression
Section 7. No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.
Truth is a defense, and it is sufficient if an allegedly libelous article is substantially true: unimportant details need not be accurate. Otero v. Ewing, 165 La. 398, 115 So. 633 (1927).
An expression of opinion on a matter of public concern, which does not imply a false fact, cannot be the basis of a defamation action. Mashburn v. Collin, 355 So.2d 879 (La.1977). An invasion of the right to privacy is only actionable when the published material is private, not when it is public and noteworthy. See Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386 (La.1979).
If a statement expresses an opinion, a defamation action must fail, unless the opinion implies a false and libelous fact and the opinion was expressed with actual malice. Bussie v. Lowenthal, 535 So.2d 378 (La. 1988).
Summary judgment is favored in defamation cases because lengthy litigation could have a chilling effect on freedom of the press. Sassone v. Elder, 626 So.2d 345 (La. 1993). To avoid summary judgment for defendants, plaintiffs have the burden of showing: either (1) a false factual statement and fault on the newspaper's part (Philadelphia Newspapers, Inc. v. Hepps); or (2) a statement of opinion on a matter of public concern which reasonably implies false and defamatory facts and actual malice (Mashburn v. Collin; Bussie v. Lowenthal).

CONCLUSION
Dr. Romero was a private figure, practicing his profession without media attention or notoriety. However, the question of vaginal delivery versus Caesarean section delivery is a matter of national debate and a question of great public interest and concern. Dr. Romero was unfortunate in having his name thrown into that debate by Ray Landry. That misfortune does not give rise to an action for defamation.
Dr. Romero claims that he was accused of being a butcher. However, Dr. Wolfe was referring generally to all Louisiana obstetricians doing what he regarded as excessive Caesarean sections. His hyperbole was not directed at Dr. Romero. The statement of opinion did not reasonably imply any false and defamatory fact about Dr. Romero. Milkovich; Mashburn v. Collin. According to Dr. Wolfe, reporter Hawkings accurately reported their conversation. See Greenbelt Cooperative Publishing Ass'n v. Bresler. Dr. Wolfe's opinion was constitutionally protected speech. Mashburn v. Collin. There can be no recovery without proof of malice, even if there were a defamatory implication. Bussie v. Lowenthal. Dr. Wolfe's statement *871 was accurately reported, and there is no evidence of malice.
Plaintiffs have shown no false statements in The Daily Advertiser's article other than the reference to Dr. Romero as nearing retirement and a possible discrepancy in his Caesarean rate. The retirement statement was based on the reporter's conversation with Ray Landry. Reporter Hawkings made a good faith effort to check his facts. The statement that Dr. Romero was nearing retirement, although not precise, had a reasonable basis because Landry described Dr. Romero as having a limited, semi-retired practice. Thus, Hawkings' report was substantially true. Otero v. Ewing. The Caesarean section rate was based on the published report, and the discrepancy claimed by Dr. Romero is insignificant. The newspaper also included the hospital's explanation: "a large number of repeat Caesarean patients."
The reported story caused Dr. Romero great anguish and apparently affected his medical practice. However, the inescapable fact is that the hospital where he performed all deliveries had the highest Caesarean rate among 34 states. Over 50 percent of his deliveries were Caesarean sections.
What The Daily Advertiser said about Dr. Romero was substantially true. Counsel could not pinpoint false statements in oral argument or brief. Since plaintiffs have failed to show false factual statements in the article, they cannot avoid summary judgment.
The Daily Advertiser story was constitutionally protected truthful speech on a matter of public interest and concern. Any unfortunate consequences to Dr. Romero flowing from the report are the price of a free and unfettered press.

DECREE
The trial court erred in not granting defendants' motion for summary judgment. Summary judgment in favor of defendants is granted, dismissing plaintiffs' claims with prejudice.
REVERSED: SUMMARY JUDGMENT GRANTED.
LEMMON, J., concurs.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur in the judgment reversing the trial court and granting defendants' motion for summary judgment of this matter.
As this Court has recognized, the standard for summary judgment in a defamation action provides greater protection to defendants than in other types of action as a means of safeguarding free speech and press rights under our state constitution from the chilling effects brought on by unmeritorious litigation. Sassone v. Elder, 626 So.2d 345, 351 (La.1993); see also Mashburn v. Collin, 355 So.2d 879, 890-91 (La.1977) (proper application of summary judgment is essential to provide an effective tool for preventing unnecessary harassment of defendants by nonmeritorious actions threatening free speech). To survive a motion for summary judgment, a defamation plaintiff "must produce evidence of sufficient quality and quantity to demonstrate that he likely will be able to meet his burden of proof at trial." Sassone, supra, at 351.
The newspaper article at issue in this case concerns the medical treatment of women in this country and, in particular, in this state. This topic is clearly a matter of great public concern and interest. I believe that our state constitution incorporates the standard articulated by a plurality of the U.S. Supreme Court in Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), overruled sub silentio by Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), which applies the New York Times actual malice test to speech of public concern regardless of the status of the plaintiff. See Sassone, supra at 356 (concurring opinion). Consequently, the plaintiffs here must produce evidence to demonstrate the likelihood that they will be able to show by clear and convincing evidence that the article was published with knowing and reckless disregard of its falsity. Id. (concurring opinion); Mashburn, supra at 890 (La.1977). Because I do not find that *872 the plaintiffs have met that burden here, I agree that summary judgment in favor of the defendants is appropriate.
NOTES
[1] Judge William Norris, III, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, in place of Associate Justice Pike Hall, Jr.

Calogero, C.J., not on panel. Rule IV, § 3.
[2] David Hawkings, State has high C-section rate: 3 area hospitals among nation's highest, The Daily Advertiser, May 13, 1992, at A-1, C-section A-5.