699 So.2d 1143 (1997)
Daniel Judd MOORE, et al., Plaintiff-Appellant,
v.
Fred V. CABANISS, D.D.S., Defendant-Appellee.
No. 29834-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
*1144 William Dyess, Victoria M. Cranford, New Orleans, for Plaintiff-Appellant.
Eric G. Johnson, Minden, William G. Kelly, Jr., Monroe, for Defendant-Appellee.
Before NORRIS, BROWN and GASKINS, JJ.
NORRIS, Judge.
The plaintiff, Dr. Judd Moore, DDS, appeals a judgment notwithstanding verdict ("JNOV") that rejected his defamation claim against the defendant, Dr. Fred Cabaniss, DDS. The District Court granted JNOV on the finding that none of Dr. Cabaniss's communications about Dr. Moore were false. Finding no error, we affirm.

Factual and procedural background
Dr. Moore is a dentist in Minden who had opened his practice around 1983. Some 30-40% of his patients are children. In May 1990 a Mrs. Robertson took her four-year-old son, Michael, to Dr. Moore for his first dental exam. Dr. Moore x-rayed the boy's mouth and then advised Mrs. Robertson that her son needed 11 fillings. He did not show her the actual x-rays, but rather indicated to her the areas of decay on a diagram. He performed the fillings shortly thereafter. According to Mrs. Robertson, Michael complained about the fillings continuously, and within a couple of months he developed an infection around one front tooth that Dr. Moore had filled. Feeling that Dr. Moore had not done very good work, Mrs. Robertson took Michael to Dr. Cabaniss, another dentist in Minden.
Dr. Cabaniss diagnosed an abscessed front tooth, for which he prescribed antibiotics. Mrs. Robertson asked him if all the dental work performed by Dr. Moore had really been necessary; Dr. Cabaniss replied that he would need to see the pre-operative x-rays to make that determination. At Mrs. Robertson's request, Dr. Cabaniss obtained the xrays from Dr. Moore's office. (These films will be referred to herein as the "first xrays.")
According to Dr. Cabaniss, upon receipt of the first x-rays he found that the left side film was at an improper angle to assess properly; however, the right side film, which was "diagnostic quality," showed no evidence of decay at all. Dr. Cabaniss showed this film to his brother-in-law and dentist, Dr. John McConnell, and to another local dentist, Dr. Edward Brown. Both these doctors agreed the film showed no evidence of decay, although it depicted three milk teeth in which Dr. Moore had done restorative work. About a week after receiving these x-rays, Dr. Cabaniss advised Mrs. Robertson that he could not find anything to justify the three fillings that Dr. Moore placed in the right side of Michael's mouth.
According to both Mrs. Robertson and Dr. Cabaniss, she asked if there was anything she could do about the unnecessary fillings; he advised her she could lodge a complaint *1145 with the State Board of Dentistry.[1] She did so, and soon retained a Shreveport lawyer, Don Miller, to file a malpractice complaint with the Commissioner of Insurance, seeking Dr. Moore's policy limits of $100,000.
Dr. Moore testified that he was anguished about Mrs. Robertson's actions, in part because he considered his work impeccable, and in part because he could not re-examine Michael's x-rays, as he had sent them to Dr. Cabaniss. He was also exasperated that the Medical Review Panel ("MRP") convened without asking him to testify. The MRP studied the first x-rays, which Dr. Cabaniss had forwarded to Don Miller; its members examined Michael and reviewed Dr. Moore's patient chart. It issued an opinion in August 1992, finding that Dr. Moore had breached the standard of care by placing three fillings in the right side of the patient's mouth, where there was no x-ray evidence of decay. The panel also found, however, no evidence of permanent damage to the patient. A dissenting member, Dr. Phillips, found that all treatment rendered by Dr. Moore was "absolutely adequate and necessary."
Dr. Moore ultimately settled the malpractice claim with Mrs. Robertson for $9,000 without admitting liability. He felt that Dr. Cabaniss falsely accused him of malpractice and conspired with Mrs. Robertson to induce her to lodge a fraudulent claim. He also felt that Dr. Cabaniss initiated a campaign to harass and torment him. Specifically, he alleged that between February 1991 and September 1994, Dr. Cabaniss repeatedly cut him off in traffic or passed him on the highway while making obscene gestures; put coffee grounds in his truck radiator; threw a dead, disemboweled cat on Dr. Moore's front doorstep; struck Dr. Moore in the back while they were in the buffet line at the Holiday Inn; threw a rock in a window of Dr. Moore's house, with a note attached telling him and his "stupid family" to get out of town; and stalked him by driving past his house slowly. For purposes of this opinion, it is sufficient to state that apart from his supposition, Dr. Moore adduced little proof of any of these allegations; in fact, Dr. Cabaniss proved that at the time of the dead cat incident, he was out of the country with his family on a cruise, and the incident at the Holiday Inn, which should have been seen by several participants of the OSHA conference, was not corroborated by a single person, not even Dr. Moore's friend (and member of the MRP), Dr. Phillips.
Dr. Moore filed this suit in October 1994, claiming intentional infliction of mental distress and loss of consortium.[2] He alleged that Dr. Cabaniss had intentionally and maliciously altered the first x-rays to efface the evidence of cavities in Michael Robertson's mouth, thus exposing Dr. Moore to the ridicule of his professional peers and a malpractice suit. He also alleged the other acts of harassment outlined above.
Because the claim was for mental distress, Dr. Cabaniss sought discovery of Dr. Moore's medical and psychiatric records.[3] These included reports from Shreveport psychiatrist Dr. George Seiden, who had been treating Dr. Moore since 1984, when he diagnosed panic disorder and mixed personality disorder with obsessive and compulsive traits long before the Robertson incident. Clinic records showed that Dr. Moore had sought counseling for marital and sexual problems prior to the Robertson incident as well, and a possible addiction to Xanax.
Dr. Moore amended his petition in August 1996 to claim that Dr. Cabaniss had maliciously spread and disseminated this "sensitive" information, thereby defaming him in the Minden community and committing an unfair trade practice to harm his business. Dr. Moore offered no proof of this, but at trial Dr. Cabaniss admitted mentioning Dr. Moore's accusations to many people, some of *1146 whom "ventured an opinion" about the case. Dr. Cabaniss also admitted that he had Dr. Moore's psychiatric records in his office, where "there has been some conversation," but he maintained that any information thus disclosed was accurate and correct. Dr. Moore did not contest the accuracy of his medical records.
Meanwhile, Dr. Moore claimed he discovered in 1995, in his insurance files, duplicate originals of the x-rays of Michael Robertson's mouth, taken in 1990. These films (referred to herein as the "second x-rays"), he contended, clearly showed interproximal (between the teeth) decay exactly where he placed the fillings. Claiming that the second x-rays would exonerate him, Dr. Moore persuaded the retired judge presiding in the malpractice matter to reconvene the MRP. The panel met, examining the second x-rays and, apparently, an affidavit from a Dr. Thumpthy in New Orleans, who "certified" that the second x-rays had not been altered. The panel, however, did not alter its original conclusions. Dr. Phillips found that the fillings were necessary and appropriate; Drs. Hollembeak and Caskey disagreed, and specifically commented that they doubted the authenticity of the second x-rays, Dr. Thumpthy's affidavit notwithstanding.
The matter was tried before a 12-member jury in November 1996. At the close of the plaintiffs' case, the District Court granted Dr. Cabaniss's motion for directed verdict with respect to claims by Dr. Moore's dental corporation; this aspect of the judgment is not appealed. At the conclusion of all evidence, the jury rejected Dr. Moore's claims for intentional infliction of mental distress and unfair trade practices, and Mrs. Moore's claim for loss of consortium; these aspects of the judgment are not appealed. The jury found, however, by an 8-4 vote, that Dr. Cabaniss had libeled or slandered Dr. Moore; the District Court instructed the jury that eight votes was not sufficient to render verdict, and directed them to reconsider. One jury member changed his vote and the panel returned a 9-3 verdict of libel or slander, fixing Dr. Moore's damages at $50,000.
Dr. Cabaniss filed a motion for JNOV or new trial; Dr. Moore filed a motion for additur. After hearing argument, the District Court granted the motion for JNOV, specifically finding that none of Dr. Cabaniss's communications about Dr. Moore were false, thus establishing an absolute defense to defamation. The judgment recites that in the event the JNOV is reversed on appeal, a new trial would be granted in accord with La. C.C.P. art. 1811.
Dr. Moore has appealed, urging that the District Court erred in granting JNOV because there was a valid line of reasoning and possible inferences to support the jury's finding that Dr. Cabaniss altered the first x-rays, communicated this false information to other persons and thus defamed him. He also urges that Dr. Cabaniss defamed him by maliciously communicating and displaying his confidential medical records to "hundreds of people." Finally, he contends the District Court erred in failing to give a jury charge pertaining to special damages, with the result that the jury awarded him far less than the $949,691 projected by his own expert.

Applicable law
Defamation is an invasion of a person's interest in his reputation and good name. Sassone v. Elder, 626 So.2d 345 (La. 1993). To prevail in a defamation claim, the plaintiff must prove defamatory words, publication, falsity, malice (actual or implied), and resultant injury. Cangelosi v. Schwegmann Bros. Giant Super Mkts., 390 So.2d 196 (La.1980); Kosmitis v. Bailey, 28,585 (La.App.2d Cir. 12/20/96), 685 So.2d 1177. The failure of any one of these elements of proof is fatal to the action. Kosmitis v. Bailey, supra. Truth is, of course, an absolute defense to the action for defamation. Pool v. Gaudin, 209 La. 218, 24 So.2d 383 (1945). An expression of opinion on a matter of public concern, which does not contain a provably false factual connotation, cannot support a defamation action. Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); Romero v. Thomson Newspapers, 94-1105 (La.1/17/95), 648 So.2d 866, cert. denied 515 U.S. 1131, 115 S.Ct. 2556, 132 L.Ed.2d 810 (1995).
*1147 Closely related to the tort of defamation is the tort of invasion of privacy, which is defined as an unreasonable intrusion into a person's seclusion or solitude, or into his private affairs. Capital City Press v. East Baton Rouge Parish Metro. Council, 96-1979 (La.7/1/97), 696 So.2d 562, and citations therein. Invasion of privacy can result, among other things, from unreasonable public disclosure of embarrassing private facts. Jaubert v. Crowley Post-Signal Inc., 375 So.2d 1386 (La.1979). The right of privacy may be lost by express or implied waiver or consent, or a course of conduct that prevents its assertion; it is also qualified by the rights of others. Capital City Press v. East Baton Rouge Metro. Council, supra; see also Turner v. State, 494 So.2d 1292 (La.App. 2d Cir.1986).
The JNOV is authorized by La. C.C.P. art. 1811. JNOV should be granted only when the evidence, viewed in the light most favorable to the party opposing the motion, points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach a contrary verdict. Anderson v. NOPSI, 583 So.2d 829 (La.1991); Gibson v. Bossier City Gen'l Hosp., 594 So.2d 1332 (La.App. 2d Cir.1991). If there is evidence of such quality and weight that reasonable jurors might reach different conclusions, the motion should be denied. Anderson v. NOPSI, supra; Laing v. American Honda Motor Co., 628 So.2d 196 (La.App. 2d Cir. 1993), writ denied 94-0375 (La.3/25/94), 635 So.2d 239. The District Court is not permitted to substitute its own judgment of the facts for that of the jury, and must consider all evidence in the light most advantageous to the party in whose favor the jury verdict was rendered. Laing v. American Honda, supra.
On review, the appellate court must determine if the trial court erred in granting the JNOV; such determination is made by the same criteria as the trial court utilizes in granting the motion. Anderson v. NOPSI, supra; Wilson v. National Union Fire Ins., 27,702 (La.App.2d Cir. 12/6/95), 665 So.2d 1252.

Discussion: Alleged alteration of first x-rays
By his first assignment Dr. Moore urges the District Court erred in granting JNOV in light of facts and reasonable inferences that Dr. Cabaniss defamed him by altering the first x-rays, furnishing them to the first MRP, and thus sabotaging his chance of receiving a fair hearing from the panel.
In support of this contention, he reiterates in detail the chain of custody of the first xrays: they were sent from Dr. Moore's office, at Mrs. Robertson's request, to Dr. Cabaniss's office, then to Mrs. Robertson's lawyer, and then to the MRP. One member of the MRP, Dr. Phillips (a close friend of Dr. Moore's), testified he doubted the first xrays' authenticity, as they appeared lighter in color than an original x-ray, lacked the "dimple" of an original x-ray, and were partly covered with scotch tape apparently to conceal the absence of the dimple.[4] He further cites Dr. Phillips's testimony regarding the second x-rays, which Dr. Moore claims to have discovered in an insurance file some 2½ years after the first MRP had convened. Dr. Phillips was accepted as an expert in general dentistry, and as such was permitted to convey the opinion of Dr. Thumpthy of the LSU Dental School in New Orleans. Neither Dr. Thumpthy's expert credentials, nor the text of his letter, were introduced at trial. However, according to Dr. Phillips, Dr. Thumpthy said the second x-rays, showing interproximal decay where Dr. Moore placed fillings, were true, accurate, and untampered with. The inference is that the first x-rays, which spent about a week in Dr. Cabaniss's possession, must have been altered in some way to obliterate the signs of decay in the child's teeth. Dr. Phillips further testified that Dr. Cabaniss could have done this by overexposing a duplicate of the film, or by "generational distortion."[5] Dr. Moore further argues *1148 that the altered x-rays constitute a falsehood which Dr. Cabaniss communicated by showing the films to Mrs. Robertson and to other dentists, and sending them to the attorney.
Defamation is premised upon, inter alia, defamatory words which are false. Cangelosi v. Schwegmann Bros., supra. Expressing an opinion on a matter of public interest without advancing a provably false fact is not defamation. Romero v. Thomson Newspapers, supra, and citations therein.
The jury answered its first interrogatory by finding that Dr. Cabaniss did not commit any intentional act that inflicted mental or emotional distress upon Dr. Moore. As framed by the pleadings, the alleged intentional act was the alteration of the first xrays. Though not specifically appealed, the jury's rejection of this factual contention is not plainly wrong. Notably, Dr. Cabaniss explicitly denied making any alteration, two MRPs accepted the evidence of the first xrays without questioning their accuracy, and Dr. Moore settled Mrs. Robertson's malpractice claim, albeit without admitting liability.
The finding that Dr. Cabaniss did not alter the x-rays undermines Dr. Moore's argument that such conduct defamed him. Admittedly, Dr. Moore proved that Dr. Cabaniss published the first x-rays at Mrs. Robertson's request. However, Dr. Cabaniss's opinion that Dr. Moore performed unneeded restorative work in the child's mouth was a medical conclusion which did not contain a provably false fact. Romero v. Thomson Newspapers, supra. A health care provider, consulted for a second opinion, may honestly express the professional opinion that prior treatment was substandard. Id., and discussion therein. In short, once the jury rejected the claim that Dr. Cabaniss falsified the x-rays, there were no facts or reasonable inferences to support a verdict of defamation. Anderson v. NOPSI, supra; Laing v. American Honda Motor Co., supra. The District Court was not plainly wrong to grant JNOV. This assignment lacks merit.

Disclosure of medical records
By his second assignment Dr. Moore urges the District Court erred in granting JNOV in light of facts and reasonable inferences that Dr. Cabaniss needlessly and prejudicially disclosed confidential medical and psychiatric records to the community. He concedes that truth is a defense to defamation, "and the contents of the medical records are true." Br., 15. However, he argues that publication of sensitive records "continue[d] a pattern of slander and libel of a professional person in a small community and should not be tolerated within the bounds of the law because that type of [conduct] violates La. C.C. art. 2315." Id.
Dr. Moore is correct to concede that all material derived from the medical records is true. As truth is an absolute defense, the District Court was not plainly wrong to grant JNOV dismissing this aspect of the defamation claim.
Although the argument is not framed in these terms, the thrust of Dr. Moore's contention appears to be that Dr. Cabaniss committed an invasion of his privacy by publicizing true but embarrassing details of his medical and psychiatric records. However, the right of privacy is subject to waiver and to limitation by the discovery rights of others. Capital City Press v. East Baton Rouge Metro. Council, supra. The defendant is authorized to discover medical records which are "relevant to an issue in the case." La. C.C.P. art. 1465.1.
Dr. Moore filed this action seeking damages for, inter alia, mental distress. In our view, he waived his right of privacy in his medical records, in that by filing a suit he should have known that his medical records will be discovered. See Jeffers v. Seattle, 23 Wash.App. 301, 597 P.2d 899 (1979); Forster v. Manchester, 410 Pa. 192, 189 A.2d 147 (1963). Dr. Cabaniss was entitled to investigate the records for evidence that Dr. Moore's symptoms antedated the alleged tort; his handling of the records was not unreasonable in light of Dr. Moore's allegations *1149 and claims for nearly $1 million in damages.
Because the matters disclosed were true, the District Court was not plainly wrong to dismiss Dr. Moore's defamation claim. Insofar as Dr. Moore's claim was one for invasion of privacy, the court was not plainly wrong to reject it as waived. This assignment lacks merit.[6]

Decree
For the reasons expressed, the judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Dr. Moore's statement in brief that Dr. Cabaniss "suggested" that she file a complaint is not supported by the testimony of either party to the conversation.
[2] Also named as plaintiffs were Dr. Moore's wife, Barbara Moore, and his dental corporation, Daniel J. Moore, DDS.
[3] Dr. Cabaniss also filed an exception of prescription, which the district court denied in March 1995. He has re-urged this exception in the Court of Appeal, but because of our decision on the merits we do not reach it.
[4] Curiously, Dr. Phillips did not express doubts in his dissent from the MRP's first opinion; by contrast, Drs. Hollembeak and Caskey explicitly stated that they questioned the authenticity of the second x-rays, which were submitted directly by Dr. Moore to the second MRP.
[5] Testifying for the defendant, Dr. Hollembeak described how an x-ray showing no decay could be altered to resemble a normal film showing interproximal decay. He reiterated his position in the second MRP that the second x-rays, produced by Dr. Moore years after the first MRP, "might have been altered."
[6] By a third assignment Dr. Moore contests the District Court's failure to give a jury charge pertaining to special damages, which the result that the jury awarded only $50,000 in general damages instead of the $964,691 of total damages projected by his expert CPA and economist, Mr. Wilson. Because of our decision on the merits we need not address this issue, but observe parenthetically that Dr. Moore did not object to the general charge given by the court. This would preclude a party from contesting the charge on appeal. La. C.C.P. art. 1793 C; Luman v. Highlands Ins. Co., 25,445 (La.App.2d Cir. 2/23/94), 632 So.2d 910.