# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-642

**SUSAN ARNAUD, ET VIR.**

**VERSUS**

**RONALD DIES**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 12-C-0059-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**REVERSED AND RENDERED.**

**Michael W. Robinson**
**Pucheu, Pucheu & Robinson, LLP**
**P. O. Box 1109**
**Eunice, LA 70535-1109**
**(337) 457-9075**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Susan Arnaud**
    **Robbie Arnaud**

**John F. Wilkes, III**
**Joy C. Rabalais**
**Kyle N. Choate**
**Taylor R. Stover**
**Allison M. Ackal**
**Borne, Wilkes & Rabalais, LLC**
**P. O. Box 4305**
**Lafayette, LA 70502-4305**
**(337) 232-1604**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Ronald Dies**

**PETERS, J.**

The plaintiffs, Susan Arnaud and Robbie Arnaud, appeal the trial court's judgment dismissing their suit for defamation against the defendant, Ronald Dies. For the following reasons, we reverse the decision of the trial court and render judgment in favor of Susan Arnaud and Robbie Arnaud, awarding them $10,000.00 each in damages.

## DISCUSSION OF THE RECORD

Susan and Robbie Arnaud are husband and wife and the owners of Robbie's Wrecker Service, a towing business with a principal office location outside the city limits of Eunice, Louisiana. Ronald Dies was elected Chief of Police for the City of Eunice in the fall of 2010, and took office on January 1, 2011. Prior to Mr. Dies taking office, the Eunice Police Department (Police Department) had maintained a rotation list for situations involving a need for a wrecker service within the city limits, and Robbie's Wrecker Service was one of the businesses listed on the rotation list. However, after his election, Mr. Dies took steps to have Robbie's Wrecker Service removed from the rotation list. This action and the events that followed gave rise to this litigation.

In a letter to Robbie's Wrecker Service dated December 31, 2010, Mr. Dies, in his capacity as Chief of Police-elect, informed the Arnauds that their towing business would be removed from the rotation list effective January 1, 2011, and that only wrecker services with headquarters inside Eunice city limits would be on the Police Department's wrecker service rotation list. Mr. Dies suggested no reason for the towing service's removal other than the fact that the business was not located in the city limits of Eunice. However, on January 3, 2011, when Mr. Dies spoke to Jim Butler, a reporter for The Eunice News, a local newspaper, his reason for removing Robbie's Wrecker Service from the rotation list had changed.

In his January 3, 2011 encounter with Mr. Butler, the two men discussed the reasons for the modification of the wrecker service rotation list, and in a January 6, 2011 article printed in The Eunice News, Mr. Butler attributed the following statement to Mr. Dies (emphasis added):

> *We had numerous complaints about the firm's selective response to calls when they came up on the rotation.* We now have two instead of three in our rotation -- John R. Young and Acadiana Wrecker. Of course, a motorist can ask for any service they like, as long as it can be on the scene within 30 minutes.

The reference in the newspaper article to the "numerous complaints" forms the basis of the Arnauds' claim of defamation.[1] After the Arnauds brought their suit to recover damages for defamation, preliminary motions filed by Mr. Dies eliminated any recovery for their claimed special damages.[2] The trial of the remaining issues was completed on January 4, 2016, and at the end of the evidentiary phase of trial, the trial court took the matter under advisement. On February 2, 2016, the trial court issued written reasons for judgment wherein it concluded that the Arnauds had proven neither defamation nor damages. On March 1, 2016, the trial court executed a written judgment dismissing all of the Arnauds' claims against Mr. Dies. The Arnauds raise two assignments of error in their timely perfected appeal:

> 1. The Trial Court erred in concluding that the plaintiffs had not carried their burden of proof in establishing the elements of defamation, including publication of defamatory statements, falsity of such statements, fault on the part of the defendant, and damages.

---

[1] The Arnauds first filed a mandamus action against Mr. Dies seeking to have the wrecker service reinstated to the rotation list. However, the trial court denied them relief in that action and the Arnauds did not appeal that judgment.

[2] The trial court granted exceptions and a motion for partial summary judgment filed by Mr. Dies. The effect of that action by the trial court was to dismiss all of the Arnauds' claims against Mr. Dies. However, a subsequent appeal to this court resulted in a reversal of that part of the trial court judgment rejecting the Arnauds' claims for general damages, and a remand to the trial court for further proceeding consistent with that opinion. *Arnaud v. Dies*, 13-834 (La.App. 3 Cir. 4/9/14), 153 So.3d 453.

2

2.    The Trial Court erred in dismissing with prejudice the claims made by the plaintiffs against the defendant for defamation.

## OPINION

In its reasons for judgment, the trial court initially agreed with the trial judge previously assigned to this matter that the Arnauds' removal from the rotation list "was in part probably due to some type of political payback[,]" but then concluded that the Arnauds "have not shown any damages for defamation." Later in its reasons for judgment, the trial court concluded that the words at issue in this litigation did not constitute defamation because "[t]here was not evidence of malice on the part of [Mr. Dies]." That being the case, the trial court also concluded that the Arnauds had "failed to prove their claim for defamation."

The supreme court in *Costello v. Hardy*, 03-1146, pp. 12-15 (La. 1/21/04), 864 So.2d 129, 139-41 (footnotes omitted), discussed the tort of defamation as follows:

> Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. *Fitzgerald v. Tucker*, 98-2313, p. 10 (La.6/29/99), 737 So.2d 706, 715; *Trentecosta v. Beck*, 96-2388, p. 10 (La.10/21/97), 703 So.2d 552, 559; *Sassone v. Elder*, 626 So.2d 345, 350 (La.1993). "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Trentecosta*, 96-2388 at 10, 703 So.2d at 559 (*citing* RESTATEMENT (SECOND) OF TORTS § 558 (1977)). The fault requirement is often set forth in the jurisprudence as malice, actual or implied. *See, Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, 198 (La.1980) (which also considers falsity as a fifth and separate element); 12 William E. Crawford, Louisiana Civil Law Treatise: Tort Law § 17.4 at 312 (2000). Thus, in order to prevail on a defamation claim, a plaintiff must prove "'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.'" *Trentecosta*, 96-2388 at 10, 703 So.2d at 559 (*quoting Sassone*, 626 So.2d at 350). If even one of the required elements of the tort is lacking, the cause of action fails. *Douglas v. Thomas*, 31,470, p. 3 (La.App. 2 Cir. 2/24/99), 728 So.2d 560, 562 *writ denied*, 99-0835 (La.5/14/99), 741 So.2d 661; *Kosmitis v. Bailey*, 28,585, p. 2 (La.App. 2 Cir. 12/20/96), 685 So.2d 1177, 1180.

Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule. *Fitzgerald*, 98-2313 at 11, 737 So.2d at 716; *Trentecosta*, 96-2388 at 10, 703 So.2d at 559 (*citing* RESTATEMENT (SECOND) OF TORTS § 559 cmt. (e) (1977)). Words which convey an element of personal disgrace, dishonesty, or disrepute are defamatory. *Fitzgerald*, 98-2313 at 11, 737 So.2d at 716. The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. *Sassone*, 626 So.2d at 352. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. *Id.* To be actionable, the words must be communicated or "published" to someone other than the plaintiff. *Kosmitis*, 25,585 at 3, 685 So.2d at 1180.

In Louisiana, defamatory words have traditionally been classified into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. *Lemeshewsky v. Dumaine*, 464 So.2d 973, 975 (La.App. 4 Cir.1985). Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. *Kosmitis*, 28,585 at 4, 685 So.2d at 1180; *Lemeshewsky*, 464 So.2d at 975; 12 Crawford, Louisiana Civil Law Treatise: Tort Law § 17.8 at 315. When a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant. *Kosmitis*, 28,585 at 4, 685 So.2d at 1180. The element of injury may also be presumed. *Id.*

When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice (or fault) and injury. *Kosmitis*, 28,585 at 4, 685 So.2d at 1180. In cases involving statements made about a public figure, where constitutional limitations are implicated, a plaintiff must prove actual malice, *i.e.,* that the defendant either knew the statement was false or acted with reckless disregard for the truth. *See, Romero v. Thomson Newspapers (Wisconsin), Inc.*, 94-1105, p. 5 (La.1/17/95), 648 So.2d 866, 869.

The injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish even when no special damage such as loss of income is claimed. *Kosmitis*, 28,585 at 4, 685 So.2d at 1180. Regardless of the type of injury asserted, however, a plaintiff must present competent evidence of the injuries suffered. *Id.* at 28,585 at 5, 685 So.2d at 1181. A plaintiff must also demonstrate that the defamatory statements were a

4

substantial factor in causing the harm. *Id.* (*citing Taylor v. Town of Arcadia*, 519 So.2d 303, 306 (La.App. 2 Cir.), *writ denied*, 522 So.2d 1097 (La.1988)).

Finally, even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified. *Doe v. Grant*, 01-0175, p. 9 (La.App. 4 Cir. 1/29/03), 839 So.2d 408, 416, *writ denied*, 03-0604 (La.5/2/03), 842 So.2d 1102; *Arledge v. Hendricks*, 30,588, p. 4 (La.App. 2 Cir. 6/26/98), 715 So.2d 135, 139.

It is clear that, by leaving the complete burden of proof to the Arnauds, the trial court categorized the words at issue in this litigation in the category of words "susceptible of a defamatory meaning." We find that to be legal error on the part of the trial court. The statement attributed to Mr. Dies is defamatory per se, as it would tend to harm the Arnauds' business reputation, lower their standing in the community, and might deter individuals from doing business with them. Additionally, by its very nature it would have a tendency to injure the Arnauds' personal and professional reputation. Therefore, falsity, malice, and injury are presumed, and the burden of proof shifted to Mr. Dies to rebut those presumptions.

"Appellate review of questions of law is to discern whether the district court's interpretative decision is legally correct. If legal error is found, the legal conclusions of the district court are thus subject to *de novo* review by this Court." *Forum for Equal. PAC v. McKeithen*, 04-2477, 04-2523, p. 10 (La. 1/19/05), 893 So.2d 715, 723 (citation omitted). Because the trial court's error is an error of law, we must perform a *de novo* review of the record.

### False Statement Element

Mr. Dies testified that there were actually two reasons Robbie's Wrecker Service was removed from the rotation list: (1) the business was located outside the city limits; and (2) the complaints from Police Department personnel concerning the manner in which Robbie's Wrecker Service responded to calls for

wrecker assistance. We find that the record before us clearly establishes that the first reason, and not the second, was the basis used to remove the business from the rotation list.

Mr. Dies testified at the defamation trial that while campaigning for the Office of Chief of Police, he heard numerous complaints from Eunice citizens concerning Police Department personnel misusing police property. After taking office, and to respond to those complaints, he required that Eunice police officers reside within a certain distance of the city limits, and that personal use of their police vehicles was limited to travel to and from work. Otherwise, police vehicles were not to be taken outside the city limits.

Although he did not testify concerning any similar constituency complaints with out-of-city wrecker service regulation, Mr. Dies explained his reasoning in limiting wrecker service providers to those who reside in the city limits of Eunice as a jurisdictional matter. He testified that, because his jurisdiction extended only to the city limits, he decided to change the operational requirements for tow trucks found in the Police Department's Policy and Procedure Manual (Procedure Manual) to limit out-of-city businesses' involvement in Police Department business. Specifically, he amended the Procedure Manual which, since 1983, had stated the operational requirements for tow trucks were that their "[b]usiness facility and storage facility must be located within service zone established by the Chief of Police[,]" to read, effective January 1, 2011, that their "[b]usiness and storage facility must be located within the service zone (city limits) as established by the Chief of Police."

The first time the Arnauds were told there was a problem with their wrecker service remaining on the rotation list was the December 31, 2010 letter sent by Mr. Dies. In that letter, Mr. Dies informed the Arnauds that their business would be

6

removed from the rotation list and would remain as an "on request only" wrecker service, and that "[t]he only wrecker services allowed on the list will be those whose headquarters are inside the Eunice city limits."[3] Nothing in that letter suggested that "complaints" had any part in the decision to remove Robbie's Wrecker Service from the rotation list. Additionally, despite his statement to Mr. Butler three days after the December 31, 2010 letter, when Mr. Dies testified in the mandamus proceeding, he denied using the complaints as a basis for removal and continued to assert that the sole reason was the out-of-city location of Robbie's Wrecker Service.

In his deposition testimony, Mr. Dies changed his position slightly in that he continued to claim the business location as a reason for removing Robbie's Wrecker Service from the rotation list, but related it as the most important reason, but not necessarily the only one. He further suggested that, despite his comments to Mr. Butler days later, he did not mention the complaints in his December 31, 2010 letter because he "didn't think it was really that relevant."

Mr. Dies claims that the complaints against Robbie's Wrecker Service were related to him by Police Department personnel after his election but prior to his taking office. Specifically, Mr. Dies testified that these individuals accused Robbie's Wrecker Service of inadequate response to calls from the Police Department. With respect to this reason, Mr. Dies presented no testimony at trial other than his own self-serving testimony.

When asked to identify those making complaints, Mr. Dies stated that he could not remember the names, but that "I know it's people that work for the police department. They were employees at that time." Mr. Dies had made a

_____

[3] The letter asserted that this action was "[b]y order of Chief Ronald Dies, effective January 1, 2011[.]"

7

similar statement in his deposition testimony. However, when he testified in the mandamus proceedings, he identified three Police Department employees, Cathy Papillion, Lavone Edwards, and Lt. Don Thibodeaux, whom he asserted had expressed complaints to him before he took office. Mr. Dies did testify that Ms. Edwards expressed to him before he took office that she had problems with some of the wrecker services used by the City of Eunice, but she refused to identify the specific wrecker services involved or the nature of the problems.[4] These three individuals were not called to testify at the mandamus trial or the defamation trial.[5]

Mr. Dies did testify to one incident which took place at the Police Department before he took office wherein he claimed to have firsthand knowledge of problems with Robbie's Wrecker Service. He testified that he was present one night when a dispatcher contacted Mr. Arnaud requesting that he respond to a request for wrecker. He testified that he heard Mr. Arnaud ask questions concerning the identity of the driver, whether the driver had insurance, and the extent of the damage involved. He claims that after the dispatcher finished the call, she told him that Mr. Arnaud followed this procedure constantly before he would consent to take a rotation assignment.

Mr. Dies also testified that he confirmed the nature of the complaints by examining the Police Department logs relating to the communications between it and the three wrecker services on the rotating list. However, our *de novo* review of those logs establishes only one occasion when Robbie's Wrecker Service was

_____

[4] Mr. Dies apparently made the assumption that Ms. Edwards was speaking of Robbie's Wrecker Service when she expressed the fact that she was having problems. However, there exists no evidence to make that connection.

[5] We do recognize that the issues at the mandamus trial were different from those in the defamation trial and may not have required the testimony of these three individuals for the trial court to have concluded that the Arnauds' mandamus action had no merit.

unwilling to respond when called.[6]  In fact, there was only one instance where Mr. Arnaud refused to respond to a call based on the rotation list.  That event occurred in July of 2010, which by most of Mr. Dies' testimony was probably not a month in which he reviewed the Police Department's logs.

On the other hand, the Arnauds called Anise Gauthreaux, a dispatcher at the Police Department at the time Mr. Dies took office.[7]  Ms. Gauthreaux testified that she never had any problems with any of the wrecker services on the rotation list, and that before he took office and during her short time serving under him, Mr. Dies and she never had a conversation concerning the wrecker services, including specifically Robbie's Wrecker Service.

Mr. Dies repeatedly testified that location was the reason for removing Robbie's Wrecker Service from the rotation list.  His self-serving testimony concerning the complaints, unsupported by the testimony of the alleged complainants or an explanation of why those individuals could not be called to testify, does not overcome the presumption that his statement concerning complaints against the Arnauds and Robbie's Wrecker Service was false.  In fact, were we to conclude otherwise, we would have to accept Mr. Dies' position that he eliminated all out-of-city wrecker service providers, present or future, in response to unsubstantiated complaints against one such provider.  In our *de novo* review, we find that Mr. Dies failed to rebut the presumption that his statement was false.

---

[6] The Arnauds did not work exclusively for the Police Department, and no evidence was introduced to establish that if Robbie's Wrecker Service was involved in another call at the time its name came up on the rotation list, it was required to drop everything and respond to the Eunice call.

[7] Ms. Gautheraux continued working only a few months after Mr. Dies took office.  She chose to resign to avoid disciplinary action associated with her personal relationship with another employee of the Police Department.

9

### *Publication Element*

The only element set forth in *Costello* that is not seriously at issue in this litigation is the issue of unprivileged publication to a third party. "Publication is defined as a communication to a person other than the one alleging the action." *Heflin v. Sabine Ass'n of Retarded Citizens*, 96-782, p. 5 (La.App. 3 Cir. 12/26/96), 685 So.2d 665, 667. Mr. Butler testified that when he saw a notation on the Police Department log that Robbie's Wrecker Service was no longer on the rotation list, he questioned the new Chief of Police about the change in policy. When questioned concerning the quotation attributed to Mr. Dies in The Eunice News, Mr. Butler responded: "That's a direct quote. I don't write fiction." At trial, Mr. Dies admitted to making the statement to Mr. Butler, although he stated that he also told Mr. Butler that an additional reason for the removal was the out-of-city location of the Arnauds' business.[8]

We conclude that the Arnauds carried their burden of proof on the publication element.

### *Fault Element*

"Malice (or fault), for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the statement giving rise to the defamation." *Costello*, 864 So.2d at 143. "Malice in this sense is more akin to negligence with respect to the truth than to spite or improper motive." *Id.* The standard for malice concerning statements about a private person are set forth in the RESTATEMENT (SECOND) OF TORTS § 580B (1977), which provides that malice requires that the person making the defamatory statement either "(a) knows that the statement is

---

[8] Additionally, at his September 23, 2014 deposition, he acknowledged telling Mr. Butler that complaints concerning the selective response by Robbie's Wrecker Service were the reason for its removal from the rotation list. However, at the trial on the mandamus action, Mr. Dies denied having told Mr. Butler that Robbie's Wrecker Service had been removed from the rotation list due to complaints, and testified that he had related nothing about complaints to anyone other than his "personnel people."

false and that it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them."

Because proof of this element is presumed where the defamatory statement is classified as defamation per se, Mr. Dies bore the burden of rebutting the presumption. We find that he failed to do so. The only evidence that the complaints were ever made was Mr. Dies' self-serving testimony, but assuming for the purpose of argument that Mr. Dies did hear some complaints concerning Robbie's Wrecker Service, he took no steps to confirm or reject the truthfulness of those complaints. That being the case, when he made his statement to Mr. Butler he did so with reckless disregard of the truth of his statement and the defamatory effect the statement had on the Arnauds. Our *de novo* review establishes that Mr. Dies in fact acted with the malice necessary to satisfy this element of a defamation claim.

### *Injury or Damage Element*

An individual is entitled to recover the damages he or she sustains as a result of another's fault. La.Civ.Code art. 2315. At this point in this litigation, the Arnauds are seeking only an award of general damages. These are damages which are based on the facts and circumstances of a particular case and may not be fixed with pecuniary exactitude. *Jones v. Centerpoint Energy Entex*, 11-2 (La.App. 3 Cir. 5/25/11), 66 So.3d 539, *writ denied*, 11-1964 (La. 11/14/11), 75 So.3d 946. General damages "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." *Duncan v. Kansas City S. Ry. Co*., 00-66, p. 13 (La.10/30/00), 773 So.2d 670, 682 (quoting *Keeth v. Dep't of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La.App. 2 Cir. 1993) (internal quotation marks omitted).

11

While the injury element may be presumed in cases of defamation per se, the injured party must still prove his or her damages "by competent evidence[.]" *Lege v. White*, 619 So.2d 190, 191 (La.App. 3 Cir. 1993). Still, in doing so, "there is no need to establish the actual pecuniary value of the injury suffered." *Id.* Furthermore, "[d]amages resulting from defamation can include injury to reputation, personal humiliation, embarrassment, and mental anguish and suffering." *Id.*

Both Susan and Robbie Arnaud testified that they suffered embarrassment when Mr. Dies' statement was published in The Eunice News. In order to avoid being asked about the incident, they changed their personal routine completely. Rather than go into Eunice to shop or for other personal business, they began taking care of those activities by going out of town. Both testified that the newspaper article caused them to have trouble sleeping, and the tension caused by the daily concern of what had been said even strained their personal relationship to the point that they engaged in arguments over the incident that would have never occurred before January 1, 2011. According to Mr. Arnaud, their mental state only began to improve after Mr. Dies left office as Chief of Police, thus eliminating the daily reminder of what had been said about them and their business. Still, they worked through their problems without either one seeking medical treatment or counseling. The testimony of other witnesses established that the Arnauds' concerns about public opinion and discussion were well-founded.

Mr. Butler testified that he heard people discussing the article about town, even though no one ever asked him specifically what the truth was about why Robbie's Wrecker Service was removed from the wrecker service rotation list. Furthermore, he heard gossip around the Police Department concerning what the

possible complaints were that caused Robbie's Wrecker Service to be removed from the rotation list.

Gary Fontenot, the individual who had held the office of Eunice Chief of Police in the term before Mr. Dies took office, testified that at the time of trial people were still discussing this incident around town. Not only did he hear it discussed, but, on occasion, people would ask him what he knew about Robbie's Wrecker Service's removal. Mr. Fontenot testified that despite the discussion on the streets of Eunice, he personally did not lose any respect for the Arnauds, because he had known Mr. Arnaud for a very long time. Randy Fontenot, the Eunice Chief of Police at the time of trial, testified that he believed Mr. Arnaud still had goodwill in the City of Eunice, but that people were still discussing Robbie's Wrecker Service's removal from the rotation list some four years later.

Jill Thibodeaux, a former co-worker of Mrs. Arnaud, testified that she and the Arnauds would often eat lunch together before the publication of the newspaper article, but that everything changed thereafter. Mr. Arnaud stopped joining them for lunch immediately, and Mrs. Arnaud also stopped soon thereafter when people began to question her concerning the wrecker service being removed from the rotation list. According to Ms. Thibodeaux, these incidents would cause Mrs. Arnaud to become very upset. Ms. Thibodeaux also related an incident when Mrs. Arnaud became very upset while trying to explain to those in the office where she worked what had happened to the family business.[9] Although she had not previously considered Mrs. Arnaud to be a very emotional person, after the newspaper article, her friend's behavior changed and she would tear up and cry at work when the matter came up. Ms. Thibodeaux testified that in 2014, Mrs.

_____

[9] Mrs. Arnaud testified that she informed her boss about what happened because she had mentioned Robbie's Wrecker Service was removed because of location and then the article came out saying it was due to numerous complaints and her boss wanted to know what was going on. Mrs. Arnaud testified that the rest of the office workers were able to hear the conversation.

13

Arnaud had yet to return to her former routine of going to the cafeteria for lunch. Still, Ms. Thibodeaux testified that she never felt embarrassed to work with her friend, nor did she think any less of her after the incident.

The trial court based its conclusion that the Arnauds suffered no damages on the lack of evidence of professional counseling and medical treatment. We find that the trial court erred in requiring expert testimony to establish that the Arnauds were injured and sustained general damages. We can award defamation damages without expert testimony. *See Cluse v. H & E Equip. Servs., Inc.*, 09-574 (La.App. 3 Cir. 3/31/10), 34 So.3d 959, *writ denied*, 10-994 (La. 9/17/10), 45 So.3d 1043; *Dietz v. Dietz*, 14-1164 (La.App. 3 Cir. 5/6/15), 165 So.3d 342, *writ denied*, 15-1504 (La. 10/23/15), 179 So.3d 604. We find that the Arnauds established evidence of their injuries which was not rebutted by the defendant.

### *Quantum Issue*

General damage awards to the victims of defamation that have occurred over the years, are case sensitive, and fall in all ranges. We find a recent opinion of this court to be helpful in the evaluation of the matter before us.

In *Dauzat v. Dolgencorp, LLC*, 15-1096 (La.App. 3 Cir. 4/6/16), 2016 WL 1358496, *writ denied*, 16-832 (La. 6/17/16), 192 So.3d 766, this court recently affirmed an award of $20,000.00 each to two customers who were wrongfully accused of shoplifting at a Marksville, Louisiana, Dollar General Store and arrested for those charges. The awards covered their defamation claims as well as their claims for false arrest. The plaintiffs expressed emotions and community reactions similar to those expressed by the Arnauds in the matter before us, and the opinion affirming the trial court judgment contains no evidence of medical or other professional services having been provided to the plaintiffs during their ordeal.

14

Considering the fact that the Arnauds seek only recovery for defamation damages, we find that the sum of $10,000.00 each should compensate them for their personal damages.

## DISPOSITION

For the foregoing reasons, we reverse the trial court judgment rejecting the claims of Susan Arnaud and Robbie Arnaud against Ronald Dies, and render judgment awarding judgment in favor of Susan Arnaud and Robbie Arnaud, and against Ronald Dies, in the amount of $10,000.00 each. We assess all costs of court to Ronald Dies.

**REVERSED AND RENDERED.**