759 So.2d 165 (2000)
Leonard GREEN
v.
ALASKA NATIONAL INSURANCE COMPANY, Rowan Companies, Inc. and Universal Services.
No. 99-C-2844.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 2000.
Writ Denied June 2, 2000.
*167 John H. Denenea, Jr., Jonathan M. Walsh, Wiedemann & Wiedemann, New Orleans, Louisiana, Counsel for Plaintiff/Relator.
Grady S. Hurley, L. Etienne Balart, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, Counsel for Defendant/Respondents.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MOON LANDRIEU, Judge JAMES F. McKAY, III, Judge MICHAEL E. KIRBY and Judge ROBERT A. KATZ).
ARMSTRONG, Judge.
We agree with the trial court's determination that venue is not proper in Orleans Parish and, therefore, we will affirm that part of the judgment. However, we feel that dismissal with prejudice is not warranted in this case and that an order of transfer to a parish of proper venue is more appropriate. Thus, we will vacate that portion of the judgment dismissing this case with prejudice, and remand with instructions that the trial court conduct such proceedings as are necessary or convenient to determine a correct venue for this case and then transfer the case to such a correct venue.[1]
This is a maritime personal injury action. The plaintiff, allegedly a seaman, was seen by a physician of his choosing, Dr. John Watermeier, for his alleged injuries. Dr. Watermeier recommended back and neck surgery. The plaintiff also was seen by Dr. Edmund Landry who was a physician chosen by Alaska National Insurance Company ("Alaska National") which was the insurer of the alleged employer of the plaintiff. Dr. Landry initially concurred in the recommendation for back surgery but not in the recommendation for neck surgery.
At that point, according to the allegations of the petition, Alaska National sent "several documents and records" to Dr Watermeier. The plaintiff's writ application states that these documents and records were copies of medical records from the Veterans Administration. Also, according to the allegations of the petition as elaborated upon in the plaintiff's writ application, Alaska National sent the same Veterans Administration medical records, plus a surveillance videotape of the plaintiff, to Dr. Landry. According to the plaintiff's writ application, after receiving these materials, Dr. Landry withdrew his recommendation for surgery. The petition and writ application do not state whether Dr. Watermeier changed his opinion in any way.
There is no allegation that Alaska National obtained the medical records in any improper way, no allegation that the medical records were false, incomplete or misleading, no allegation that the medical records contained any unusually private information or were anything other than routine medical records and no allegation that the medical records or any information from them was disclosed to any persons other than the two physicians who were examining and evaluating the plaintiff. There is no allegation that the videotape was obtained in any improper way, no allegation that the videotape was false, incomplete or misleading and no allegation that the videotape or any information from it was disclosed to any person other than the physician engaged by Alaska National to examine and evaluate the plaintiff. The petition and the writ application make no mention of any invasion of privacy. The plaintiff alleges only that Alaska National sent ordinary medical records to two physicians who already had examined *168 and evaluated the plaintiff, and who thus already had substantial knowledge of the plaintiff's medical condition, and that the physician who had been engaged by Alaska National also received a surveillance videotape.
The plaintiff filed this suit in Orleans Parish. He allegedly is a resident of Winnfield, Louisiana. Alaska National allegedly is a foreign insurer. The other defendants allegedly are a foreign corporation with its principal place of business in Louisiana in St. Mary Parish and a foreign partnership with its primary place of business in Jefferson Parish. There is no allegation that the plaintiff's injury (which occurred aboard a vessel) occurred in Orleans Parish.
Most of the allegations of the plaintiff's petition relate to his accident aboard a vessel of one of the defendants, his resulting injury and his rights to receive compensation for that injury. Because his accident and injury did not occur in Orleans Parish, the plaintiff does not rely upon his allegations as to the accident as establishing venue in Orleans Parish. However, the plaintiff alleges that Alaska National's sending the Veterans Administration medical records to Dr. Watermeier and sending the Veterans Administration medical records plus the surveillance videotape to Dr. Landry constitutes a tort of "interference with medical treatment" and that, because Dr. Watermeier and Dr. Landry are located in Orleans Parish, that tort occurred in Orleans Parish. Thus, the plaintiff argues that venue is proper in Orleans Parish based solely upon the occurrence there of "medical interference".
The defendants responded by filing a number of exceptions. Following a hearing, the trial court held that the plaintiff had not alleged any tort occurring in Orleans Parish, maintained the exception of improper venue and dismissed the case with prejudice.
We agree with the trial court. The plaintiff has developed a creative theory of a possible new tort. However, we pretermit any discussion or decision as to whether there is a tort of "interference with medical treatment" because, even if there is such a tort, facts sufficient to constitute such a tort have not been alleged in this case.
There is no allegation that the copies of the Veterans Administration medical records sent by Alaska National to Dr. Watermeier and Dr. Landry were anything other than genuine, complete photocopies. In other words, nothing false or misleading was sent by Alaska National. The worst that the plaintiff alleges or asserts about these Veterans Administration medical records is that they were useless and irrelevant to the plaintiff's present medical issues. But, whether the medical records were useless or irrelevant to Dr. Watermeier and Dr. Landry was a determination to be made by those physicians themselves and Alaska National did not act wrongfully by giving the two physicians the opportunity to make that decision. So long as an insurer does not knowingly submit to a physician false or misleading information, we will not hold that the insurer has acted tortiously by submitting information that turned out to be of no value.
As to the surveillance videotape submitted by Alaska National to Dr. Landry, we believe that an analysis similar to that which we applied to the medical records applies here as well. So long as the surveillance videotape actually showed the plaintiff at a time subsequent to the alleged injury, and had not been altered or tampered with to make it false or misleading, we cannot say that the insurer acted tortiously by submitting it to one of the doctors. The plaintiff has not denied that the videotape shows him at a time subsequent to his alleged injury and has not alleged or asserted that the videotape was altered or tampered with to make it false or misleading.
*169 The plaintiff puts considerable emphasis on Alaska National's motive in sending the Veterans Administration medical records to Dr. Watermeier and Dr. Landry and in sending the surveillance videotape to Dr. Landry. The plaintiff's alleged employer has an alleged legal obligation to pay for maintenance and cure, which includes necessary medical treatment, because the plaintiff is allegedly a seaman. Alaska National, as the alleged employer's insurer, was asked by Dr. Watermeier to authorize (i.e. agree to pay for) surgery for the plaintiff. It was in that connection that Alaska National engaged Dr. Landry to examine the plaintiff. Thus, Alaska National, as the party being asked to pay for the surgery, had a legitimate interest in submitting information to the two doctors.
Lastly, the plaintiff cites a Louisiana criminal statute, La. R.S. 14:332, which statute forbids "the intentional and willful interference with a physician... in the performance of their duties relating to the care and treatment of patients." Alaska National argues that this statute encompasses only physical interference with a physician's care of patients and does not, in any case, create any tort liability or remedy. We need not decide whether to accept Alaska National's arguments because, whatever exactly is meant by the statute, we do not believe that the statute could have been violated under the facts as alleged and asserted by the plaintiff in this case. As we have explained in detail above, Alaska National is not alleged or asserted to have sent false or misleading information to the doctors. Thus, we do not believe that the conduct of Alaska National, which is described in detail above, can constitute willful and intentional interference with a physician.
The only basis for venue in Orleans Parish argued for by the plaintiff is the asserted claim of interference with the plaintiff's medical treatment by doctors located in Orleans Parish. As the plaintiff's petition, even read liberally, does not allege any such tort, there is no basis for venue in Orleans Parish. In particular, the plaintiff is not from Orleans Parish, the defendants are not located in Orleans Parish and the plaintiff's injury did not occur in Orleans Parish. Thus, the trial court was correct in maintaining the exception of improper venue.[2]
However, dismissal with prejudice due to improper venue is neither legally required nor appropriate in this case. A case filed in an improper venue may be transferred to a proper venue, rather than dismissed, "in the interest of justice." La. Code Civ. Proc. arts. 121, 932. The jurisprudential rule that has evolved is that, unless the plaintiff has knowingly filed suit in the wrong venue, then the case should be transferred rather than dismissed. Marler v. Petty, 94-1851 (La.4/10/95), 653 So.2d 1167; Habig v. Popeye's Inc., 553 So.2d 963 (La.App. 4th Cir.1989). In the present case, the plaintiff chose to file suit in Orleans Parish based upon a novel theory of the tort purportedly occurring in Orleans Parish. However, while the plaintiff's theory was novel it was not frivolous. Thus, it cannot be said that the plaintiff "knowingly" filed suit in the wrong venue. Consequently, the case should be transferred to a proper venue rather than dismissed. Marler, supra; Habig, supra. On remand the trial court should conduct such proceedings as are necessary or convenient to determine the proper venue or *170 venues and then transfer the case to a proper venue.
For the foregoing reasons, we vacate the judgment of the trial court only insofar as it dismisses the case with prejudice, and remand for a transfer to a proper venue.[3]
VACATED IN PART AND REMANDED.
KATZ, J., concurs in part, dissents in part.
KATZ, J., concurring in part, dissenting in part.
This matter is before us on an Application for Supervisory Writs from the judgment of the trial court dated October 7, 1999, which essentially did two things: (1) the judgment granted the exception of improper venue and dismissed the plaintiff's Petition with prejudice and (2) the judgment granted the exception of no cause of action filed on behalf of Alaska National Insurance Company, Rowan Companies, Inc., and Universal Services in response to the cause of action filed by the plaintiff for medical interference against the foregoing defendants and dismissed this cause of action with prejudice.
The record contains no written or oral reasons by the trial court explaining the reasons for the trial court's judgment or why the trial court, having found improper venue, then proceeded to rule on the exception of no cause of action.
The Fourth Circuit had this very issue before it in the case of Favorite, et al. v. Alton Ochsner Medical Foundation, 537 So.2d 722 (La.App. 4 Cir.1988). In this case "Ochsner and Dr. Valains filed exceptions of improper venue, no cause of action, and lis pendens. The trial court sustained the exceptions of no cause of action and dismissed plaintiffs' suit as to those two defendants." p. 723. The Court of Appeal went on to set down the following guidelines: "when these two exceptions (improper venue and no cause of action) are filed together, the proper procedure would be to address the `procedural' exception of improper venue first.... Once a defendant properly raises an exception of improper venue he has placed venue at issue and it should always be resolved before the court rules on an exception of no cause of action."p.723.
The Court of Appeal also gave its rationale for following this approach: "We take this action because if it is later necessary to transfer the suit, we do not feel that the transferee court should be bound by a decision of a co-equal court from another parish.". p. 723, 724.
Hence, in the case sub judice, the trial court should have ruled on the exception of improper venue first. Then, if the court finds that venue is proper it can proceed to rule on the exception of no cause of action. Conversely, should the trial court find that venue is improper, then it should refrain from ruling on the exception of no cause of action.
However, the rule of procedure set forth in Favorite, supra., may not be so clear when a plaintiff pleads more than one theory of recovery or cause of action in the same suit and venue may be different for the respective causes of action or theories of recovery. For example, in the case sub judice, the plaintiff has alleged in his petition two causes of action: one under the Jones' Act against certain defendants and a second cause of action for tortious interference with medical treatment against certain other defendants some of whom are not defendants under the Jones' Act cause of action.
Where venue may not be the same for each of the respective causes of action or theories of recovery, the Third Circuit has attempted to reconcile this type of situation *171 in the case of Rachal v. Ford Motor Company, Inc., 96-160 (La.App. 3 Cir. 6/5/96), 676 So.2d 671, 673, writ denied, 96-2271 (La.11/15/96), 682 So.2d 773:
"Where a plaintiff institutes an action arising out of one factual circumstance and bases recovery on more than one theory of liability, if venue is proper as to any theory of recovery, then the court has venue to decide all the claims. Metcalf v. Pool & Home Care, 467 So.2d 610 (La.App. 3 Cir.1985). Therefore, even if venue were not proper as to Mr. Rachal's redhibition claim in Rapides Parish, this claim could properly be brought in Rapides Parish where venue is proper as to his warranty claim arising from the contract entered into at the Rapides Parish dealership."
In the case sub judice, the record before us does not reveal if Orleans Parish is a proper venue for either cause of action asserted by the plaintiff in his petition. Objectively, the record contains the trial court judgment that grants the exceptions of improper venue and no cause of action relating to the claim for "medical interference" but there are no reasons given for the action taken by the trial court. Therefore, we must examine the record to determine if there is a basis for this trial court to grant the exception of no cause of action.
"The purpose of an exception of no cause of action is to determine sufficiency in law of the petition and is triable on the face of the papers, and well-pleaded facts in the petition and any annexed documents must be accepted as true." Kuebler v. Martin, 578 So.2d 113 (La.1991). The burden is on the exceptor. Haspel & Davis Mill. & Planting Co., Ltd. v. Board of Levee Com'rs of Orleans Levee District, 95-0233 (La.App. 4 Cir. 9/4/96), 680 So.2d 159, writ denied, 96-2430 (La.12/6/96), 684 So.2d 932. The exception of no cause of action tests whether the law affords any remedy to the plaintiff under the allegations of the petition. Reis v.Fenasci & Smith, 93-1785 (La.App. 4 Cir.4/14/94), 635 So.2d 1319. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding that a cause of action is stated. Matheny v. Greer, 95-1341 (La.App. 1 Cir. 2/23/96), 668 So.2d 1359, writ denied, 96-0737 (La.5/10/96) 672 So.2d 923. If a petition commencing a lawsuit states a cause of action on any ground or theory of recovery arising from same transaction or occurrence described in the petition, then the exception of no cause of action should be overruled. MD Care, Inc. v. Angelo, 95-2361, 95-2362 (La. App. 4 Cir. 3/20/96), 672 So.2d 969, writ denied, 96-0986 (La.5/31/96), 673 So.2d 1039. Whether or not the plaintiff can prove the allegations is not determinative of the exception of no cause of action. Lybrand v. Newman, Drolla, Mathis, Brady & Wakefield, 95-9 (La.App. 5 Cir. 10/31/95), 663 So.2d 850. Also, when the grounds of the exception of no cause of action may be removed by amendment of the petition, the judgment sustaining the exception must order such amendment. Southland Truck Center, Inc. v. Bank of Sunset and Trust Co., 94-1245 (La.App. 3 Cir. 3/8/95), 651 So.2d 967. However, an amendment is not required when it would be a vain and useless act. Browne v. American Bank & Trust Co., 594 So.2d 1105 (La.App. 4 Cir.1992).
In addition to alleging a cause of action under the Jones' Act, the plaintiff in the case sub judice also makes the following allegations:
"XV.
That on or about November 23, 1998, an agent, servant, and/or employee of defendant, Alaska National Insurance Company, submitted several documents and records to petitioner's treating physician located in the Parish of Orleans, State of Louisiana, for no legitimate medical purpose other than to disturb, intimidate, and/or aggravate the patient/physician relationship, and to interfere *172 with a physician's treatment of his patient, specifically petitioner."
* * * * * *
"XVIII.
After learning of the second orthopedic surgeon's recommendation for surgery, defendant, Alaska National Insurance Company and/or Universal Services, sent to said orthopedic surgeon additional information, including an investigative report and surveillance videotape or petitioner, for no medically legitimate purpose other than to intimidate, manipulate, and/or disturb, petitioner's right to proper medical treatment, and was solely done to interfere with the second orthopedic surgeon's rendering objective opinions and recommendations for treatment of petitioner."
"XIX
The actions taken by defendants in paragraph XV and XVIII above were done without the permission or approval of petitioner, either expressed or implied, and said actions constitute a tort of interference with petitioner's medical treatment in violation of LSA-R.S. 14:332, each of said actions of interference occurred in Parish of Orleans, State of Louisiana and resulted in additional damages to petitioner as described below."
"XX.
Alternatively and/or concurrently the actions of defendant described in paragraphs XV., XVIII., and XIX., above were done without the permission or approval of petitioner, either expressed or implied, and said actions constitute a willful and intentional violation of the maritime obligation of providing cure to injured and/or ill seaman, resulting in additional damages to petitioner as described above."
* * * * * *
"XXVI.
As a result of the defendant's intentional actions of interfering with the medical treatment of petitioner, petitioner was upset, annoyed, and distressed and has incurred additional injury including emotional distress, mental anguish, and anxiety, as well as medical expenses, among other damages which may be shown at the time of trial, all of which are recoverable as damages to be fixed by the trier of fact in an amount to sufficiently compensate petitioner for said injury and resulting damages."
Louisiana has fact pleadings. Although the plaintiff has labeled this second cause of action "a tort of interference with petitioner's medical treatment" and as yet it is not recognized as a civil tort, I feel that the plaintiff has pled sufficient facts to support the civilian theory of "invasion of privacy."
According to Moore v. Cabaniss, 29,834 (La.App. 2 Cir. 9/24/97), 699 So.2d 1143, writ denied, 97-2667 (La.1/9/98), 705 So.2d 1108, invasion of privacy is defined as an unreasonable intrusion into a person's seclusion or solitude, or into his private affairs.(citations omitted). A claim for the tort of invasion of privacy can result from, among other things, unreasonable public disclosure of embarrassing private facts. Id. The right of privacy may be lost by express or implied waiver or consent, or a course of conduct that prevents its assertion, and is also qualified by the rights of others. Id. This right of privacy is also subject to waiver and to limitation by the discovery rights of others. Id. at 1148.
The procedures for obtaining the medical records of a plaintiff are set forth in LSA-C.C.P. art. 1469.1, LSA-R.S. 13:3715.1, and LSA-C.E. art. 510.
Under each of these various methods, the plaintiff is to be notified that his medical records are being requested. This is done to give the plaintiff an opportunity to object in the event that the medical records are not relevant.
*173 The record before this Court does not indicate how the defendants came into possession of the plaintiff's medical records but from the allegations in plaintiff's petition, which must be accepted as true, neither he nor his attorney were notified that these medical records were being turned over to representatives of the defendants.
Accordingly, I find that the plaintiff has stated a cause of action for invasion of privacy against the defendants.
In addition, the defendants had a surveillance film made of the plaintiff without the plaintiff's knowledge and forwarded this film to the defendants' doctor. Fairness dictates that the plaintiff should have had the opportunity to review the surveillance film before it was forwarded to the doctor so that plaintiff could respond, if he so chose.

CONCLUSION
I find that the trial court was in error: (1) in granting the Exception of No Cause of Action, especially without giving the plaintiff the opportunity to amend his petition although I find that it is sufficient to support a theory of invasion of privacy; (2) granting the exception of improper venue; and (3) dismissing the plaintiff's petition in its entirety and assessing costs against the plaintiff.
Accordingly, I would recall and set aside the trial court judgment in its entirety and remand this matter to the trial court for an evidentiary hearing on the proper venue of both of the causes of action plead in accordance with the views expressed in this dissent.
NOTES
[1] The only one of the defendant's exceptions that we address in this decision is the exception of improper venue. However, in order to resolve that venue exception, we have had to consider the merits of the petition to a very limited extent solely in order to determine whether any tort allegedly occurred in Orleans Parish.
[2] Our decision in the present case is not inconsistent with our decision in Favorite v. Ochsner, 537 So.2d 722 (La.App. 4th Cir. 1988). In Favorite, we held that an exception of venue should be decided before an exception of no cause of action is addressed. In the present case, we have addressed only an exception of venue. We have considered the merits of plaintiff's petition only to the extent necessary to determine whether any tort allegedly occurred in Orleans Parish. Because venue in Orleans Parish is predicated solely upon a tort having occurred there, it is appropriate to examine at least the face of the petition in order to determine whether facts are alleged that, if true, could constitute a tort occurring in Orleans Parish.
[3] Because the judgment of the trial court dismissed this entire case, with prejudice, the judgment was a final judgment reviewable by appeal rather than on supervisory writs. La. Code Civ. Proc. arts. 1841, 2083. In order to preserve the substantial rights of the parties, we have considered this writ application as an appeal.