**146 So. 11**

**COTONIO v. GUGLIELMO et al.**

No. 31347.

Jan. 3, 1933.

Rehearing Denied Jan. 30, 1933.

Theodore Cotonio, Jr., of New Orleans, for appellant.

Charles T. Wortham and Walter Lemann, both of Donaldsonville, and Henry L. Himel, of Convent, for appellees.

OVERTON, J.

Plaintiff sues the defendants, four in number, for libel in the sum of $20,000. There was judgment below rejecting plaintiff's demand on the ground that, while the charge was untrue, defendants had probable cause to think that it was true, and that they acted without malice.

Plaintiff is a notary public in the city of New Orleans and also a practicing lawyer. He has practiced law and held the office of notary for a number of years. On December 2, 1923, plaintiff was called upon to receive and did receive, in nuncupative form, by public act, the last will and testament of Giuseppe Guglielmo, a resident of New Orleans. Guglielmo died on December 6, 1923, four days after plaintiff executed his will. The will was admitted to probate and ordered executed on the day following the death of the testator.

Subsequent to the probate of the will, three of the defendants herein, who are nephews of the deceased, and who, it is alleged, were without right to interfere in the succession proceedings of the testator, but who, actuated by the hope of gain and to injure plaintiff, filed a petition, seeking to annul and set aside the will that plaintiff had received, as a fraudulent and spurious confection, designed to place the universal legatee, Gaetano La Barbera, in possession of the decedent's estate, and also charging, quoting from the petition attacking the will, the following, to wit:

"That on December 2nd 1923, when said alleged will is dated, and for some weeks previous thereto, the decedent was bereft of his reasoning faculties: had lost the power of speech; was actually unconscious of his surroundings and labored under the affliction of amnesia and aphasia.

"That the hemorrhage in decedent's brain occurred many days previous to December 2nd 1923 and produced as a natural consequence, paralysis, not only of the mind, but of the body, from which decedent never rallied, but from which it was impossible for decedent to recover from, even temporarily, or with sufficient return of mind, or speech, to legally be of disposing mind."

Following this quotation, there appears an allegation that the defendants herein, by the words quoted, intended to convey and did convey that plaintiff had put forward a forged, false, and fraudulent will and had con-

spired with Gaetano La Barbera to steal the succession of Guglielmo. It is also alleged that the nephews and the niece of the deceased were aided and abetted in the alleged libel by the husband of the niece, and he is made the fourth defendant. It is also alleged that, on the trial of the proceeding to annul the will, the will was decreed to be valid, and that the judgment rendered was affirmed by this court in Succession of Guglielmo, 158 La. 917, 105 So. 12. It is further alleged that the allegations made by the defendants herein in their attack upon the will, as to its validity, are false, untrue, malicious, and libelous, and were made to defame, damage, and injure plaintiff.

Defendants filed an exception of no cause of action, which was referred to the merits. The defense, as shown by the answer to the suit, may be summed up as a lack of malice and the existence of probable cause.

■■ The exception of no cause of action was overruled by the lower court, and properly so. The fact that the allegations, complained of as libelous, in the suit to annul the will, are, legally speaking, material to the issue in that suit, does not, in this jurisdiction, make them absolutely privileged, and prevent an inquiry into their verity. Lescale v. Joseph Schwartz Co., 116 La. 293, 40 So. 708. This, apparently, is not questioned here. The exception, however, seems to rest on the alleged nonappearance of anything in defendants' petition to annul the will, a copy of which is attached to, and forms part of, the petition herein, which charges plaintiff with any wrongdoing, and the nonappearance of any reference, in the petition to annul, to plaintiff, beyond the bare allegation that the will offered for probate by La Barbera was a will, which purported to be executed by the decedent before plaintiff. That simple fact, however, is ample to name plaintiff, as a party to the confection of the alleged spurious and fraudulent will.

■ A nuncupative will by public act, as is well known by all lawyers, notaries, and many others, must be received and reduced to writing by the notary, as dictated by the testator, and this must appear in the will. It is therefore clear that a notary, who declares in the will, which he must declare, that he has so executed the will, when the truth is that the testator, at the time the will was received, had lost the power of speech and was unconscious of his surroundings, has done a great wrong, amply sufficient to condemn him, not only as a notary, but as an honest man. The exception is overruled.

■ In taking up the merits of the case, it may be said that the defendants here, in their suit to annul the will, signally failed to make out a case. This appears from the following quotation from the opinion of this court in Succession of Guglielmo, 158 La. 917, 919, 105 So. 12, 13, to wit:

"The plaintiffs [which includes three of the defendants here] did not prove the allegations of their petition. They called the five attesting witnesses to the stand, and each one of them testified that Guglielmo dictated the will, and that the notary wrote it as it was dictated, and thereafter read it to the testator, and that he, after having had parts of the will read to him again, expressed his understanding and approval of it, said that he could not sign his name because his right hand was paralyzed, and then made a cross mark in lieu of his signature. The proof is

positive that the testator was of sound mind, and that he dictated the will, substantially as it is written."

The only evidence that defendants produced to show probable cause is that their uncle, the testator, was on good terms with them; that they visited him at times; that on one occasion, not very long before his death, one of the defendants herein visited him, and, in the course of conversation, the testator expressed a personal dislike for La Barbera, whom he later made his universal legatee; that none of them were notified of their uncle's death, though they were living not very distant from New Orleans, but saw a notice of it in one of the New Orleans papers, after which the two nephews promptly left for the home of the deceased, but arrived after the funeral had taken place; that the will was presented for probate on the day of the funeral; and that the deceased was a man of advanced years, and had, shortly before he died, a cerebral hemorrhage or stroke of apoplexy. As to the cerebral hemorrhage, it may be here said that they also knew from his attending physician that the last time the physician visited their uncle, which was somewhere between four and seven days before he died, the deceased was conscious.

There is no pretense that defendants, or any of them, interviewed the notary, who received the will, though they now declare that they have not charged him with wrongdoing, and bore no ill will against him, nor is there any pretense that they interviewed the five attesting witnesses to the will, or any one of them, in whose presence the will was dictated by the testator, although they must have known that all six knew the facts. What defendants did was to give to their attorney

such information as they possessed, and then left the case with him to obtain further facts.

The attorney, who died prior to this trial, advised defendants, according to the evidence of most of them, that the will could be broken, and, according to the evidence of one of them, Louis Guglieimo, that it could possibly be broken. The attorney also, according to defendants' position, filed the suit without first presenting the petition to them to be read— a procedure which they later approved, since they permitted the case to go to trial, without disavowing a single allegation therein.

The facts, recited above, as being those within defendants' possession at the time suit was filed, were not sufficient to give defendants probable cause to think that plaintiff had received the will while the testator was unconscious of his surroundings and incapable of speech. These facts were sufficient, perhaps, to excite inquiry, but not to constitute probable cause for legal action.

It did not follow, because the testator had a cerebral hemorrhage some days before, that he was unconscious and incapable of speech at the time the will recites that it was dictated by the testator and taken down by the notary as dictated. This, one of the defendants knew to be true as a physician, as appears from his evidence. Besides, all the defendants knew from the testator's physician that the last time he visited him, which was about the time the will was executed, or two or three days prior thereto, the testator was conscious, and they were without any information showing, or tending materially to show, that a change for the worse in his condition had occurred, which was still in existence at the time of the execution of the will. It likewise does not follow that be-

cause the testator once had a personal dislike for La Barbera this dislike remained to his death. As to the remaining circumstances, which defendants rely upon as showing probable cause, they are of too little weight, we think, to call for specific notice. .

■ With respect of malice, it is unlikely that defendants bore any actual malice or ill will towards plaintiff. He was a stranger to them. Actual malice, however, is unnecessary to sustain the action for libel. Malice, arising from the publication of a false and injurious charge, without probable cause for thinking the charge is true, suffices. This malice, which constitutes legal malice, need not be proved. The law imputes it to the publisher of a libel from the act of publication. Weil v. Israel, 42 La. Ann. 955, 8 So. 826.

■ Legal malice exists in this case. Its existence was not overcome by the advice defendants' counsel gave before the institution of the suit to annul the will, even assuming that the advice was that the will could be annulled. This advice was given at a time when all of the facts, which defendants hoped existed, and which they hoped could be gathered through the inquiries of their counsel, were not before him. An opinion given under such circumstance is of no avail in a libel suit, based upon false and injurious allegations in another suit, whatever effect, if any, the opinion may have otherwise. The fact that the attorney later filed the suit to annul the will without presenting it to their clients to be read—a method of procedure which they later tacitly approved by not disavowing the

injurious allegations—does not improve their situation in the present case. These allegations were not out of line with the trend of the information defendants had given their attorney, who was their agent.

■ The charge made for nullifying the will was injurious to plaintiff. No notary may long hope to survive, who executes what, upon its face, appears to be a nuncupative will by public act, when in truth and in fact the testator was unconscious and speechless at the time the supposed will was executed.

■ Plaintiff is entitled to damages. We think, in view of the complete vindication he has received, that $500 damages suffices. This amount is sufficiently substantial, which it ought to be, not to subject plaintiff's efforts to obtain vindication by legal means to ridicule, and yet not so much as to deter those having probable cause from attacking nuncupative wills by public act on similar grounds.

In writing this opinion we do not wish it understood that any one making such an attack, who acts in good faith, upon probable cause, is in danger of being mulct in damages, although he should fail to substantiate his charge. On the other hand, litigants must be careful to see that they have probable cause.

For these reasons, the judgment appealed from is set aside, and judgment is now rendered against defendants, in solido, for $500 with legal interest thereon from judicial demand until paid; defendants to pay the costs in both courts.